UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

THERESA ANN BRANDT,

                Plaintiff,

v.                                                Case No.  5:09-cv-97-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 9) and both parties have filed briefs outlining their respective positions. (Docs. 14 & 15.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On August 1, 2005, Plaintiff filed an application for disability insurance benefits claiming a disability onset date of April 11, 2001.[1] (R. 129-33.) Plaintiff's applications were denied initially and upon reconsideration. (R. 27-30, 40-41, 45-46.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 39.) Plaintiff appeared and testified at hearings held on June 12, 2008 (R. 463-527) and August 12, 2008. (R. 528-49.) The second hearing was held so that the ALJ could obtain testimony

_____

[1]Plaintiff initially filed for disability benefits in 2004. (R. 136-38.) Her application was denied in May 2005 and she did not appeal that decision. (R. 467.)

from V. David Pigue, a vocational expert. The ALJ issued a decision unfavorable to Plaintiff on November 5, 2008. (R. 13-25.) The Appeals Council denied Plaintiff's request for review. (R. 5-8.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See Also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-five (45) years old when the ALJ issued his decision. (R. 129, 468.) Plaintiff has a tenth-grade education and has worked as a waitress, cook and supervisor in a restaurant. (R. 155, 160, 469, 472.) Plaintiff contends that she has been unable to work since April 11, 2001 due to pain and weakness after about 10 minutes of activity, an extremely limited ability to walk, and memory difficulties. (R. 154.) However, she volunteered at the library ten hours per month as a requirement for food stamps. (R. 475.) She remains insured for benefits through June 30, 2008. (R. 120.)

According to Plaintiff, her problems began on April 11, 2001, when she broke her neck in a motor vehicle accident. (R. 477.) Plaintiff had surgery – C7 corpectomy for

---

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

decompression of cervical spine followed by fusion from C6 through C7 – at Tampa General Hospital. (R. 208-41.)   Plaintiff testified that other problems have "snowballed" from this initial injury – pain in her neck, lower back and hip as well as numbness in her arms and legs. (R. 479, 491-92, .)

Plaintiff was treated at Thomas E. Langley Medical Center ("Langley") for pain management.  (R. 316-78.)  Progress notes show that Plaintiff began to complain about increasing back pain in October 2004. (R. 351-52.)  However, examination results on November 16, 2004 were not consistent with her allegations of severe limitations – she had no reproducible pain, normal heel and toe walking, symmetric and brisk reflexes, no sensory deficits, a normal neurologic examination, and normal gait and coordination. (R. 349-50.)  On March 1, 2005, Frank Pellegrino, M.D., one of Plaintiff's treating physicians at Langley, noted that Plaintiff had opiate dependent low back pain and neck pain with good medication improvement, but that it was aggravated by co-morbid anxiety and depression.  (R. 341-42.)  Dr. Pellegrino noted that Plaintiff's pain was controlled on morphine sulfate sustained release, 60 mg twice a day, along with Lorcet for break through pain.  On examination, Dr. Pellegrino noted slow mentation, but the only positive physical findings were a "chronic ill appearance," depressed affect and decreased range of motion in the head and neck.  Nevertheless, Dr. Pellegrino opined that she was totally disabled from any meaningful employment.

An MRI of the lumbar spine in June 2005 showed a large herniated disc at L3-4 (with compression of the nerve root sleeve) and a moderate disc herniation at L4-5 (compression of the nerve root sleeve.) (R. 367-68.)

On July 14, 2005, treatment notes show that Plaintiff's pain was controlled by medication. (R. 332.)  In September 2005, Dr. Pellegrino noted that Plaintiff could not bend over to pick up objects; could only sit for five minutes at a time without readjusting her position; had an abnormal gait and was unable to heel/toe walk and squat; and used a cane and a walker after extended walking.  (R. 327-28.)

In December 2005, Plaintiff reported improvements in her ability to walk and do housework without resting and it was noted that her level of pain was improved since June 2004. (R. 326.)  Plaintiff's headaches had decreased and her weight was down to 199 pounds.  In April 2006, Plaintiff reported her average pain was down to only 2/10 and when asked to rate the effectiveness of her medications on a scale of one to ten (ten being "complete relief" from pain), Plaintiff rated two of her medications "nine." (R. 317-18.)   At the hearing, Plaintiff testified that the morphine makes her drowsy. (R. 495.)

In November 2006, Plaintiff went to Lawrence Field, D.O. for a consultative examination.  (R. 410-12.)  Plaintiff complained of constant low back pain that can radiate down both legs.  She reported that she could sit for 2 hours at a time and stand for 30 minutes at a time.    Plaintiff ambulated into the room with a cane in her left hand. On examination, Dr. Field noted prominent lumbar scoliosis; loss of lumbar lordosis; left hip was elevated higher than her right; right shoulder elevated higher than her left; range of motion in lumbar spine was reduced but cervical range of motion was normal; normal range of motion in all joints; grip strength at 5/5; normal fine manipulation; straight leg raising was negative; motor strength was 5/5; heel, toe and tandem walking were normal; gait was normal; and her mental status was normal.  Dr. Field found no

mental impairments but opined that prolonged sitting, standing, all walking and prolonged traveling would be affected due to the scoliosis and associated abnormal musculature.  He found that Plaintiff's ability to handle objects, hear, speak and see were unaffected.

In fall 2007, Plaintiff relocated to Poughkeepsie, New York to live with her daughter.  Plaintiff testified that she moved so that her daughter could care for her. (R. 489-90.)  However, Plaintiff's doctor recorded that Plaintiff was staying with her daughter to help out with her newborn grandchild. (R. 447.)

In New York, Plaintiff sought medical treatment at Vassar Brothers Medical Center. (R. 418-57, 489-90.)  Plaintiff reported pain and requested pain medication. (R. 447-57.)  Plaintiff rated the effectiveness of her pain medication an "eight" on a scale of one to ten (with ten being "very good.") (R. 455.)  During late 2007, Plaintiff reported swelling in her hands and legs.  Venous doppler testing showed no evidence of deep vein thrombosis. (R. 436.)  An echocardiogram on February 20, 2008 showed that Plaintiff's left ventricular systolic function was mildly to moderately reduced with trivial tricuspid regurgitation.  (R. 435.)  Further testing in April 2008, prompted by complaints of chest pain, revealed reversible ischemia in the anterior wall, with an ejection fraction of 53%. (R. 442.)

Two state agency doctors reviewed the records and opined that Plaintiff could occasionally lift 10 pounds; frequently lift less than 10 pounds; stand and/or walk for a total of at least 2 hours in an 8-hour workday; must periodically alternate sitting and standing to relieve pain or discomfort; and could push and/or pull without limitation. (R. 284-91; 402-09.)  Audrey Goodpasture, M.D. opined that Plaintiff should never climb,

kneel, crouch or crawl; was limited in her ability to reach in all directions and feel; and should avoid even moderate exposure to hazards. Edward DeMiranda, M.D. opined that Plaintiff should never climb ladder/rope/scaffolds; occasionally climb ramp/stairs, balance, stoop, crouch and crawl; and avoid concentrated exposure to wetness, vibration and hazards.

At the hearing on June 12, 2008, Plaintiff testified that she has "great movement" in her neck and only "slight pain" but that her right hip is "out of whack" because her right leg is shorter than her left leg. (R. 479-80.) Plaintiff reported constant headaches that she treats with ibuprofen, 800 mg. (R. 482.)

As for Plaintiff's alleged mental impairments, Plaintiff testified that she was diagnosed with depression in 2003 and she is currently prescribed Cymbalta. (R. 493 - 94.) The records show that Plaintiff was examined by a licensed clinical social worker at Langley for help with depression, agitation, stress, attitude problems, concentration problems, relationship issues with a boyfriend, and issues related to the care of her elderly aunt, who ultimately died in 2005. (R. 244-56, 312-15.) In November 2004, Plaintiff tested positive for cannabis and she admitted to her social worker that she used cannabis one time after that. (R. 245, 256.) On February 28, 2005, the social worker completed a "Treating Source Mental Health Report" in which she opined that Plaintiff would not be able to sustain an 8-hour workday. (R. 242-43.)

Although there are no treatment records from Dr. Todoroff, he completed a "Treating Source Mental Health Report" on August 31, 2005. (R. 282-83.) Dr. Todoroff noted that Plaintiff reported periodic confusion with increased anxiety and difficulty concentrating when depressed or anxious. Dr. Todoroff observed, however, that

9

Plaintiff was fully oriented, with realistic thought content and fluid and goal directed cognition.  Dr. Todoroff opined that Plaintiff was competent to manage funds and could function well cognitively and behaviorally, but her mood was negatively impacted by her neck injuries and chronic pain.  He concluded that Plaintiff would not be able to sustain an 8-hour work day due to her physical problems – i.e., difficulty with ambulation, chronic pain, and the negative side effects of pain medication.

On May 2, 2005, Plaintiff was evaluated by Rodney A. Poetter, Ph.D. (R. 257-59.)  Plaintiff reported that her normal pain level was five on a scale of zero to ten and that she did all the cooking, laundry and housework, all of her activities of daily living independently, and drove her car 2 times a week.  Plaintiff was carrying a Canadian crutch, but Dr. Poetter noted that she could ambulate without it.  On examination, Dr. Poetter found no indication of any severe memory dysfunction or thought disorder.  Dr. Poetter concluded that while Plaintiff is being treated for depressive symptoms with counseling only, the symptoms appear secondary to her pain and physical limitations secondary to her accident and not rising to the level of a major depressive disorder. Diagnostically, Dr. Poetter found that Plaintiff's symptoms were suggestive of Mood Disorder Due to Medical Condition; Chronic Pain and Orthopedic Limitations with Depressive Features; Alcohol Abuse in Reported Remission; Cannabis Abuse, in Reported Remission; and Nicotine Dependence.

On August 2, 2006, Plaintiff was seen by Colleen D. Character, Ph.D. for a consultative evaluation. (R. 379-83.)  Plaintiff admitted a history of alcohol abuse up until her accident in 2001 as well as a history of using cocaine, cannabis and "speed.' Plaintiff reported constant pain, with her average pain level between four and five.

Plaintiff denied in-patient psychiatric treatment but that she had received psychotropic medication and pain management, as well as counseling with a social worker.  She reported that she is able to independently perform her activities of daily living, shop, cooks, and do the laundry and housework.   Dr. Character's impression was depression, moderate; pain disorder associated with both psychological factors and a general medical condition; mood disorder due to a general medical condition.

Two state agency psychologists reviewed the records and found Plaintiff only mildly restricted in her daily activities and social functioning (R. 270, 302, 394).  They found only moderate difficulties related to handling detailed instructions; sustaining concentration, persistence or pace; and making realistic goals or independent plans. (R. 270, 302, 308-09, 394, 398-99.)

At the hearing, Plaintiff testified that she can bathe and dress herself; prepare a microwave dinner or sandwich; dust; vacuum; wash dishes or fill a dishwasher; sweep or mop (with breaks after fifteen minutes); take out garbage in 10-gallon bags; fold clothes; and go grocery shopping. (R. 497-500A.)  However, she testified that she cannot drive nor can she carry laundry baskets or bend to put clothes in the washer and dryer. (R. 497-98, 500-500A.)  Plaintiff testified that she uses a cane whenever she is outside of the house and that is was prescribed by someone from Langley. (R. 500A-501.)  Plaintiff testified that she usually stays home and takes several naps in her recliner during the day.   (R. 501-03, 507-08.) She watches television about 4 hours per day and is no longer able to read novels or participate in gardening. (R. 501, 503, 508.)  Plaintiff testified that she can sit for 15 to 25 minutes before she has to change position and stand for 15 minutes and then her legs go numb.  (R. 504-05.)  Plaintiff reported

numbness in her right leg and right arm throughout the day. (R. 505-06.) She also testified that she has trouble concentrating. (R. 509.)

Based on his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had degenerative disc disease of the lumbar spine, lumbar scoliosis, short leg syndrome, cervical spine fusion, a mood disorder and opiate dependence. (R. 15.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 17-19.)

The ALJ then found that Plaintiff retained the RFC to perform light work but that she must avoid exposure to unprotected heights; must avoid balancing and climbing of ropes or scaffolds, and of ladders exceeding 6 feet; must avoid prolonged (6 hours of an 8-hour shift) exposure to cold temperature extremes, along with extreme humidity or wetness; limited to no more than occasional overhead reaching, feeling, pushing, and pulling with the bilateral upper extremities and occasional climbing of ladders not exceeding 6 feet; for sedentary occupations only, she required the option to sit, stand, or walk (walking defined as no more than 5 steps from the work station, performing a stretching maneuver, returning within one minute, no more than 5 times each hour); limited to routine tasks and simple work-related decisions related thereto (tasks performed frequently so as to be considered routine, even though the tasks themselves might not be considered simple.) (R. 19-24.)

The ALJ concluded that Plaintiff could perform her past relevant work as an informal waitress and that the work did not require the performance of work-related

12

activities precluded by Plaintiff's RFC. (R. 24-25.) In reaching this conclusion, the ALJ relied on the testimony of a vocational expert. The ALJ further found that based on the VE's testimony, even if Plaintiff could not perform the job of informal waitress, there were other jobs in the national economy that a person with her RFC could perform. Accordingly, the ALJ found that Plaintiff was not disabled.

## IV. DISCUSSION

As an initial matter, it should be noted that Plaintiff raises numerous issues in a perfunctory manner, without supporting arguments, or citation to record evidence and authorities. Thus, the Court is left to guess as to which arguments Plaintiff is actually arguing on appeal. However, even liberally construing Plaintiff's arguments, the Court concludes that the ALJ's decision is supported by substantial record evidence and should be affirmed.

### A. The ALJ's RFC finding is supported by substantial record evidence

The ALJ considered all of the record evidence and his RFC finding is supported by substantial evidence. First, Plaintiff argues that the ALJ failed to give proper and due consideration to Plaintiff's additional evidence from Vassar Brothers Medical Center. (R. 418-57.) Plaintiff contends that the records reveal that Plaintiff continued to suffer chronic pain syndrome, including severe pain in her hip; that she took numerous medications; that she had chronic lower extremity swelling; and a cardiac ejection fraction of only 40-45% with some possible tricuspid regurgitation.

Contrary to Plaintiff's contention, the ALJ considered these records in his RFC analysis. Moreover, Plaintiff has failed to explain how this evidence demonstrates

13

functional limitations that would prevent Plaintiff from performing work within the ALJ's RFC finding. The mere diagnosis of a condition does not establish disability; rather a finding of disability is based on the functional limitations that prevent a person from working.[23]

While the Vassar records reveal that Plaintiff had a mild to moderate heart abnormality, they do not show that Plaintiff had on-going functional limitations as a result of her heart condition. (R. 17, 420, 422, 424, 435, 442.) Likewise, while the records reflect Plaintiff's pain and lower extremity swelling, they do not demonstrate that Plaintiff's pain prevented her from performing work within the ALJ's RFC finding, nor do they suggest that Plaintiff's medications caused disabling side effects. (R. 418-57.) Plaintiff has failed to direct the Court to any Vassar records in which Plaintiff complained of medication side effects, nor has the Court found any. Moreover, when asked to rate the effectiveness of her pain medication on a scale of one to ten (with ten being "very good"), Plaintiff rated her medication an "eight." (R. 455.)

Next, without citing to any record evidence, Plaintiff vaguely argues that the ALJ dismissed evidence regarding chronic pain and numbness due to herniated discs at L3/4, L4/5, and continued difficulty with a previous injury to C7; as well as evidence of ambulation difficulties; and written opinions establishing Plaintiff's inability to perform physical activity.

Plaintiff fails to identify any specific record evidence nor does she explain how such evidence shows that Plaintiff could not perform the work within the ALJ's RFC

---

[23] See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)(noting that "the mere existence of [ ] impairments does not reveal the extent to which they limit her ability to work".)

finding.   Moreover, the medical evidence does not support Plaintiff's claim of disabling

pain and numbness.  In April 2001, Plaintiff fractured her neck at C7 in a motor vehicle

accident and had surgery. (R. 208-12, 234.)   At the hearing on June 12, 2008, Plaintiff

testified that she has "great movement" in her neck and her neck pain is "slight." (R.

479.)  The ALJ correctly noted that while Plaintiff's right grip was somewhat weak after

surgery, the evidence since then has shown no signs of carpal tunnel syndrome or any

chronic, significant neurological and/or functional deficit in her upper extremity motor

strength or grip strength. (R 17, 341, 345, 347, 349-50, 353, 356, 363.)

Likewise, Plaintiff's complaints of on-going disabling back and hip pain are not

supported by her post-surgery treatment history, which shows only conservative

treatment with prescription pain medication. (R. 316-78, 418-57.)  Conservative

treatment undercuts Plaintiff's claim of disabling physical limitations.[24]  Moreover, as the

ALJ noted, record evidence shows that Plaintiff's pain responded well to medication. (R.

21.)  In December 2004 and January 2005, Plaintiff's treating physician, Dr. Pellegrino,

noted Plaintiff was showing functional improvement with her pain medication (R. 346,

348); and in March and July 2005, Dr. Pellegrino noted that Plaintiff's pain was

controlled on her medications (R. 332, 341.)   In December 2005, Plaintiff reported

improved abilities to walk and do housework without resting (R. 326); in April 2006,

Plaintiff reported her average pain was down to only 2/10 (R. 317) and when asked to

rate the effectiveness of her medications on a scale of one to ten (ten being "complete

relief" from pain), Plaintiff rated two of her medications "nine." (R. 318.)

---

[24] 20 C.F.R. §404.1529(c)(3)(iv-v); <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1078 (11th Cir. 1996.).

The ALJ's RFC finding is also supported by the state agency physicians. (R. 284-91, 402-09.)  Plaintiff appears to argue that these opinions are entitled to little weight. (Doc. 15 at 5.)  State agency medical consultants are considered experts in disability evaluation, and their opinions may provide substantial evidence to support a finding of no disability.[25]  Based on their review of the evidence, the state agency doctors opined that Plaintiff would be limited to sedentary work, with a sit-stand option for back pain relief. (R. 284-91, 402-09.)   In his RFC finding, the ALJ did not limit Plaintiff to sedentary work; however, he included an alternative for sedentary work, with a sit-stand option. (R. 19.)  Thus, these opinions are substantial evidence in support of the ALJ's decision.

It is unclear whether Plaintiff is challenging the ALJ's decision to discount Dr. Pellegrino's opinions that Plaintiff was "unable to work" and "totally disabled from any meaningful work"   It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[26]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable

---

[25] See 20 C.F.R. §404.1527(f)(2); SSR 96-6p.

[26] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[27]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[28] Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[29]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[30] However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[31]

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court finds that the ALJ  properly considered the opinion of Dr.

---

[27] 20 C.F.R. § 404.1527(d)(2).

[28] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[29] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[30] 20 C.F.R. § 404.1527(d).

[31] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

Pellegrino as a treating physician and articulated good cause for discounting his opinions regarding Plaintiff's functional limitations.

The ALJ considered Dr. Pellegrino's opinions that Plaintiff was "unable to work" and "totally disabled from any meaningful work" and articulated several reasons for according them little weight.  First, the ALJ noted that the opinions were inconsistent with the medical evidence and Plaintiff's own statements regarding her functioning and activity levels.  Second, the ALJ noted that there is no evidence that Dr. Pellegrino had any training or experience in vocational assessment and that his opinions relied predominantly upon Plaintiff's subjective complaints, notwithstanding significant medical evidence to the contrary.  Indeed, Dr. Pellegrino's treatment records include detailed descriptions of Plaintiff's subjective reports, but little indication of objective findings that support the conclusion she is disabled.  (R. 316-78.)  Finally, the ALJ noted that Dr. Pellegrino's opinions went to the ultimate issue of whether Plaintiff was disabled – an issue reserved to the Commissioner.[32]  For all of these reasons, the ALJ properly discounted Dr. Pellegrino's opinions.

Turning next to Plaintiff's alleged mental health impairments, the evidence of record does not support her claim of disabling mental limitations and the ALJ's RFC finding accommodates the functional limitations the evidence supports. (R. 15-24.)   As an initial matter, Plaintiff had limited and conservative treatment for her mental health symptoms.  As the ALJ noted, Plaintiff took anti-depressants prescribed by her primary

---

[32] See 20 CFR 404.1527(e) and SSR 96-5p.

care physician and saw a licensed clinical social worker for counseling between 2004 and 2006. (R. 244-54, 312-78.)  Plaintiff was not hospitalized nor did she require emergency medical treatment for mental health symptoms. (R. 258, 380.)  This limited treatment history does not support Plaintiff's claim of disabling mental limitations.[33]

Moreover, contrary to Plaintiff's contention, the ALJ properly considered the opinions of the consultative psychologists – Dr. Poetter on May 2, 2005 and Dr. Character on August 2, 2006. (R. 257-59, 379-83.)  Without any discussion, Plaintiff contends that the ALJ failed to recognize and/or give proper "consideration to the Plaintiff's long history of depression/non-exertional limitations which was clearly established by [their] consultative examinations."  However, neither Dr. Poetter nor Dr. Character found Plaintiff had any limitations that were not accommodated by the ALJ's mental RFC finding. (R. 257-59, 379-83.)  Accordingly, the opinions of Dr. Poetter and Dr. Character constitute substantial evidence supporting the ALJ's decision.

Also supporting the ALJ's decision are the opinions of the state agency psychologists. (R. 24, 260-73, 292-311, 384-401.)    The state agency psychologists found Plaintiff only mildly restricted in her daily activities and social functioning (R. 270, 302, 394).  They found only moderate difficulties related to handling detailed instructions; sustaining concentration, persistence or pace; and making realistic goals or independent plans. (R. 270, 302, 308-09, 394, 398-99.)  State agency medical consultants are experts in disability evaluation and their opinions may provide

---

[33] See 20 C.F.R. §404.1529(c)(3)(iv); Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984.)

substantial evidence to support a finding of no disability.[34]  Thus, the ALJ properly relied upon their opinions.

The ALJ was not required to defer to the opinions of psychologist Dr. Todoroff or the social worker he supervised at Langley. (R. 242-43, 282-83.) While Dr. Todoroff completed a "Treating Source Mental Health Report" on August 31, 2005, there is no evidence suggesting that he ever personally examined Plaintiff; and thus he would not qualify as a "treating source" entitled to deference.  Moreover, the ALJ properly discounted Dr. Todoroff's opinion that Plaintiff was not able to sustain work activity due to physical limitations. (R. 283.)  The ALJ correctly noted that Dr. Todoroff is a psychologist and, thus, not professionally qualified to opine regarding Plaintiff's physical limitations.   Likewise, the ALJ properly discounted the social worker's opinions.  A social worker is not an acceptable medical source; but rather is considered an "other source." Thus, while her opinions could be relevant,they are not entitled to any deference.[35]

Without any discussion, Plaintiff states that the ALJ dismissed her testimony. (Doc. 14 at 3.)  However, the ALJ was not required to defer to Plaintiff's subjective complaints of pain and other symptoms. (R. 20.)   Plaintiff bears the burden of proving that her subjective complaints are credible and her statements concerning pain are not alone conclusive evidence of a disability.[36]  The Eleventh Circuit has adopted a two-pronged standard for examining subjective complaints.  First, Plaintiff must provide

---

[34] 20 C.F.R. §404.1527(f)(2); SSR. 96-6p.

[35] 20 C.F.R. §404.1513(a), (d).

[36] 20 C.F.R. §§404.1512(a), 404.1529(a).

evidence of an underlying medical condition; and second, she must produce objective medical evidence confirming the severity of her alleged pain or evidence that her determined medical condition is of a severity that can reasonably be expected to give rise to the degree of pain alleged.[37]  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.[38]

In this case, the ALJ applied the Eleventh Circuit's pain standard and found that "Plaintiff's statements concerning the intensity, persistence and limiting effect of these symptoms are inconsistent with the objective evidence, at times self-contradictory, and therefore not entirely credible." (R. 19-20.)   As discussed above, the ALJ discussed at length how the objective medical evidence did not support Plaintiff's allegations of disabling pain, numbness and depression.  Moreover, the ALJ noted that Plaintiff made many inconsistent statements, including inconsistent reports regarding her use of illegal drugs and abuse of alcohol, the reason she moved to New York and her physical impairments. (R.23-24.)  Discrepancies between a claimant's statements and the other evidence provide substantial evidence undermining a claimant's credibility.[39]

Moreover, Plaintiff's daily activities are also substantial evidence in support of the ALJ's credibility determination. (R. 20.)  A claimant's daily activities are relevant to her symptoms and properly considered by the ALJ.[40]  Despite Plaintiff's alleged pain, depression and side effects from medication, she cared for an elderly aunt, performed

_____

[37] See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002.)

[38] See id.

[39] See 20 C.F.R. §404.1529(c)(4).

[40] See 20 C.F.R. §404.1529(c)(3).

light housework, cooked simple meals, shopped for groceries, lived independently, had

a boyfriend, performed ten hours a month of volunteer work at a library (as a

prerequisite to receive food stamps), and cared for her dogs and cat. (R. 244-53, 381,

497-500A.)   These activities are substantial evidence in support of the ALJ's decision

that Plaintiff's complaints are not entirely credible.

Accordingly, for the reasons discussed above, the Court concludes that the ALJ

fully considered Plaintiff's functional limitations and his RFC finding is supported by

substantial evidence.

### B.      The ALJ fulfilled his duty to develop a full and fair record

Next, with limited discussion, Plaintiff argues that the ALJ failed to properly

develop a full and fair record.  While the ALJ has a basic obligation to fully and fairly

develop the record, Plaintiff – and not the ALJ – bears the burden of proving she is

disabled and, thus, Plaintiff is responsible for producing evidence to support her claim.[41]

As a hearing is non-adversarial in nature,[42] the ALJ's duty to develop the record is

triggered when there is ambiguous evidence or when the record is inadequate to allow

for proper evaluation of the evidence.[43] This includes ordering a consultative

examination if one is needed to make an informed decision[44] or re-contacting a treating

---

[41] See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[42] Id.

[43] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[44] See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984.)

physician when the information the doctor provides is inadequate to determine whether the Plaintiff is disabled.[45]

Here, Plaintiff argues that the ALJ should have ordered a consultative exam or further clarified her medical condition because the ALJ's decision "clearly reflects that the ALJ did not agree with any of the evidence after 2006 or felt that it was incomplete."[46] However, because Plaintiff has failed to show any evidentiary gap, conflict, or ambiguity in the record, the ALJ was not required to order a consulting exam or request additional records. Indeed, Plaintiff can only speculate that a consultative exam would support – and not refute – her disability claim. As discussed above, substantial evidence of record supports the ALJ's decision that Plaintiff is not disabled. Thus, the ALJ was not required to solicit additional opinion evidence.

Plaintiff also argues that her alleged onset date – April 11, 2001 – is somehow inconsistent with the record, requiring additional development pursuant to SSR 83-20. SSR 83-20 is, however, only applicable when an ALJ finds a claimant disabled under the Act.[47] Thus because the ALJ found that Plaintiff was not disabled SSR 83-20 does not apply to her claim. Moreover, even if SSR 83-20 is considered further development

---

[45] 20 C.F.R. §404.1512(e).

[46] Doc. 14 at 6.

[47] See Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004); Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997).

of the record as to onset date is not required because no ambiguity or deficiency in the medical evidence has been identified.[48]

Accordingly, the ALJ developed a full and fair record, and substantial evidence supports his RFC assessment.

## C.    The ALJ properly considered the VE's testimony

Plaintiff also contends that the ALJ failed to properly consider the VE's entire testimony.  Specifically, Plaintiff argues that the ALJ failed to consider the VE's testimony as to whether Plaintiff could perform available jobs if she had to lie down for two hours a day or could not concentrate for one quarter of an eight-hour day. (R. 541-47.)  However, the ALJ did not adopt those limitations in his RFC finding and, thus, the VE's testimony regarding the effect of those limitations on Plaintiff's ability to work is irrelevant.   The Court is unaware of any requirement (and Plaintiff has not cited any) that the ALJ restate all of the VE's testimony in his decision.

Contrary to Plaintiff's assertion, the VE did not testify that "Plaintiff's medications would provide a marked impairment that would 'knock them out of employment.'" (Doc. 14 at 4.)   Plaintiff's attorney asked the VE to opine on the effect of a combination of specific medications on Plaintiff's ability to work. (R. 541-42.)  The ALJ disallowed the question because it was a medical question, outside of the scope of a VE's expertise. (R. 542.)  Then, Plaintiff's attorney asked the VE to assume that Plaintiff took medications and they "affected her ability to concentrate for one quarter of an eight hour work day."  (R. 542-43.)  The VE did not opine that Plaintiff's medications would effect

---

[48] See McManus v. Barnhart, 2004 WL 3316303, at *6-7 (M.D. Fla. 2004)(further development is required only when "the medical evidence of record is ambiguous or inadequate.")

her ability to concentrate.  Moreover, because the ALJ's RFC finding does not include that concentration limitation, the VE's testimony on that issue is irrelevant.

### D.     The ALJ's decision was not influenced by bias

Next, Plaintiff argues that the ALJ's decision was influenced by bias.  A presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies.[49]  The burden of overcoming the presumption rests on Plaintiff and she must show a conflict of interest or some other specific reason for disqualification.[50]  The presumption can be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present.[51]  The alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."[52]

The sole basis for Plaintiff's contention that ALJ Abruzzo was biased against her is an internet article purportedly written by ALJ Abruzzo. (R. 461-62.)  The article describes typical abuses observed in adjudicating disability cases and the challenges presented by the backlog of disability cases.   However, even if the article was authored by ALJ Abruzzo, it does not demonstrate that he was biased against Plaintiff in the disposition of her case.   Plaintiff contends that the article reveals that ALJ Abruzzo "does not feel that most claimants are deserving of benefits and setting a precursor opinion that he does not find even 50% of his cases "favorable."   However, neither the

---

[49] Schweiker v. McClure, 456 U.S. 188, 195-96 (1982.)

[50] See id.

[51] Id.

[52] United States v. Grinnell Corp., 384 U.S. 563, 583 (1966.)

Court nor the Commissioner has been able to locate such statements in the article. Moreover, as discussed above, the ALJ's decision is supported by substantial record evidence.

### E. Appeals Council

Lastly, Plaintiff argues that the Appeals Council erred in declining to grant review. (R. 5-7.) This argument is without merit. The Appeals Council considered Plaintiff's request, but found no reason under its rules to review the ALJ's decision.[53] The Appeals Council specifically considered Plaintiff's allegation of bias and found no evidence that the ALJ decided Plaintiff's claim on a basis other than his evaluation of the issues and the evidence of record. (R. 6.) As discussed above, this conclusion is supported by the record.

## V. CONCLUSION

Based on the foregoing, the Commissioner's decision is due to be **AFFIRMED.** The Clerk shall enter judgment in favor of the Commissioner and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 3, 2010.


Copies to:
    All Counsel

GARY R. JONES
United States Magistrate Judge

---

[53] See 20 C.F.R. §404.970(a).